IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| OHIO VALLEY INSULATING COMPANY, INC., *a West Virginia Corporation*, | ) ) ) ) | |
| Plaintiff, | ) ) | Civ. No. 16-211 |
| v. | ) ) | Judge Cathy Bissoon |
| MARYLAND CASUALTY COMPANY, | ) ) ) ) | |
| Defendant. | ) | |

| | |
|---|---|
| ZURICH AMERICAN INSURANCE COMPANY, *a New York corporation as successor by merger to* MARYLAND CASUALTY COMPANY, | ) ) ) ) ) ) ) |
| Third-Party Plaintiff, | ) ) ) |
| v. | ) ) |
| CONTINENTAL INSURANCE COMPANY, *an Illinois corporation*, and GRANITE STATE INSURANCE COMPANY, *a Pennsylvania corporation*, | ) ) ) ) ) ) |
| Third-Party Defendants. | |

**MEMORANDUM AND ORDER**

**I. MEMORANDUM**

For the reasons that follow, Ohio Valley Insulating Company's ("OVI") motions for partial summary judgment (Docs. 82, 86) and the cross motion for summary judgment (Doc. 102) filed by Continental Insurance Company, Zurich American Insurance Company, and

1

Granite State Insurance Company (collectively, "Insurers") will be granted in part and denied in part.

**ANALYSIS**

The facts in this case are well known to the parties, and, given that the Court writes only for them, a detailed background section will not be presented. In resolving the pending motions, the Court limits its analysis to the three policies included in the record—i.e., policy no. CL 20 67 87 ("CNA Policy")[1], policy no. 41-191384 ("Zurich Policy")[2], and policy no. POP 17-28-96 ("AIG Policy")[3]—(collectively, "Policies"). On the undisputed record at this stage, the Court is able to resolve only two legal issues, i.e., the number-of-occurrences and the aggregate limits.

On the first issue, OVI seeks a declaration that the various asbestos suits against it ("Asbestos Suits") are based on multiple "occurrences" related to its operations, i.e., installation and removal of asbestos containing materials. (Docs. 83 at 8; 87 at 21–22.) Insurers, on the other hand, maintain that the Asbestos Suits arise out of a single "occurrence," i.e., OVI's use of asbestos-containing insulation products. (Doc. 103 at 15–16.) As to the second issue, Insurers seek a declaration that the aggregate limits associated with either the "products" or the "completed operations" hazards apply in accordance with the rule announced in In re Wallace & Gale Co., 385 F.3d 820, 830 (4th Cir. 2004) ("Wallace & Gale Rule"), whereas, OVI contends that the aggregate limits are simply not implicated. (Docs. 103 at 31, 121 at 4.) Based on the reasons that follow, the Court finds that each site where OVI conducted its operations constitutes a separate "occurrence" and that the aggregate limits of the "completed operations" hazard are applicable.

---

[1] OVI Continental App., Ex. A, filed at Doc. 85-1.
[2] OVI's Zurich/Granite App., Ex. A, filed at Doc. 89-1.
[3] OVI's Zurich/Granite App., Ex. B, filed at Doc. 89-2.

A.  **Choice of Law**

As an initial matter, OVI urges the Court to apply West Virginia law whereas Insurers rely upon Pennsylvania law. A federal court exercising diversity jurisdiction generally applies the choice-of-law rules of the forum state, which in this case is Pennsylvania. Klaxon v. Stentor Electric Mfg. Co., 313 U.S. 487 (1941). Pennsylvania has adopted a flexible interest/contacts methodology to resolve contractual choice-of-law questions. Hammersmith v. TIG Ins. Co., 480 F.3d 220, 227 (3d Cir. 2007). But a "choice-of-law analysis is unnecessary where the laws at issue do not conflict." Am. Orthopedic & Sports Med. v. Indep. Blue Cross Blue Shield, 890 F.3d 445, 454 n.9 (3d Cir. 2018) (citing Hammersmith, 480 F.3d 229–30). And, the legal treatment of the number-of-occurrences issue—where one event causes damage to several persons—is same under both Pennsylvania and West Virginia law.[4] Therefore, the Court will apply the substantive law of the forum state, i.e., Pennsylvania.

B.  **Number of Occurrences**

The Policies provide that, for the purpose of determining the limit of liability, "all bodily injury . . . arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence." (Docs. 83 at ¶ 20; 84 at ¶¶ 22, 26; 101 at ¶¶ 22, 26; 103 at ¶ 20.) Under Pennsylvania's cause-oriented approach, similar policy language has been interpreted to mean that "all injuries arising from the same source arise from

---

[4] See, e.g., Donegal Mut. Ins. Co. v. Baumhammers, 938 A.2d 286 (Pa. 2007) (shooting spree over course of two hours that injured six individuals constituted a single occurrence); Kinney-Lindstrom v. Med. Care Availability & Reduction of Error Fund, 73 A.3d 543 (Pa. 2013) (the number of occurrences determined by examining whether there is one or multiple instances of professional negligence that caused the harm alleged); Kosnoski v. Rogers, No. 13-0494, 2014 WL 629343 (W. Va. Feb. 18, 2014) (carbon monoxide-related injuries sustained by two different families in two different apartments in the same duplex was caused by a single occurrence because the carbon monoxide leaked from a single source and the injuries were from exposure to substantially the same general harmful conditions).

one occurrence[,]" Liberty Mut. Ins. Co. v. Treesdale, Inc., 418 F.3d 330, 336 (3d Cir.2005), so long as there is a single "proximate, uninterrupted, and continuing cause which resulted in all of the injuries and damage." Flemming ex rel. Estate of Flemming v. Air Sunshine, Inc., 311 F.3d 282, 295 (3d Cir. 2002) (quoting Appalachian Ins. Co. v. Liberty Mut. Ins. Co., 676 F.2d 56, 61 (3d Cir. 1982)). As the parties' briefing reflects, there are no apposite cases decided by either the highest or the intermediate appellate courts of Pennsylvania. However, the Court's independent research unearthed a case from the Pennsylvania Court of Common Pleas that best addresses the law applicable to this issue.

In Kvaerner U.S. Inc. v. One Beacon Insurance Co., the insured—who constructed asbestos furnaces at various sites during different time periods—was sued by multiple claimants alleging exposure to asbestos. 2005 WL 2001117, at *4 (Pa. Ct. Com. Pl. Phila. Cty. Aug. 19, 2005). In the ensuing insurance coverage dispute, the court held that each construction site constituted a separate "occurrence" because "the claimants that were exposed to asbestos at the same location and at the same time were exposed to substantially the same general condition." Id. In so holding, the court specifically distinguished "products" claims from "operations" claims and reasoned that the insured's "activities which triggered the underlying claims did not arise from a single, negligent practice that could be considered one cause such as distributing a uniformly defective product from a single manufacturer or selling a product containing asbestos from one location." Id. This Court is persuaded by the reasoning of Kvaerner and finds it applicable to the present case in all material respects.

Specifically, four undisputed facts compel the same result here. First, the Policies restrict coverage to OVI's specified operations—i.e., "Steam Pipe or Boiler Insulation"—at various sites. (CNA Policy at CIC000002, Zurich Policy at Z000019, AIG Policy at GS000080.)

4

Second, the Policies provide coverage for "completed operations" hazards but are silent on "products" hazards' coverage. (CNA Policy at CIC000002, Zurich Policy at Z000019, AIG Policy at GS000080.) Third, the Asbestos Suits arise from multiple contracts, operations, and job sites. (Docs. 84 at ¶ 28, 101 at ¶ 28.) And finally, Insurers' determination of OVI's liability in the Asbestos Suits is based on a "contract book" match, i.e., whether a particular claimant's work history coincides with the list of OVI's contemporaneously recorded operations. (Doc. 103 at 29.) These facts demonstrate that claimants in the Asbestos Suits who were exposed to asbestos during the same time and at the same site where OVI was conducting one of its operations were subjected to continuous or repeated exposure to substantially the same general condition. Accordingly, the Court finds that each site where OVI conducted its operations constitutes a separate "occurrence."

### C. Aggregate Limits

The Policies differentiate between claims that fall under the "products" and the "completed operations" hazards, and claims that fall outside those hazards—i.e., "operations" claims. Under the CNA and the AIG Policies, claims falling under the "products" and the "completed operations" hazards are subject to aggregate limits. (CNA Policy at CIC000002, CIC000005; AIG Policy at GS000001, GS000086.) Explicit in this Court's resolution of the number-of-occurrences issue, however, is a finding that the "products" hazard aggregate limits can never be implicated because the Policies are silent on such coverage. But the Court disagrees with OVI's contention that the Asbestos Suits fall solely within the Policies' "operations" coverage. Rather, as explained below, the Court finds that the aggregate limits associated with the "completed operations" hazard are applicable in accordance with the Wallace & Gale Rule.

The "completed operations" hazard in the Policies is defined, in pertinent part, to "include[] bodily injury and property damage arising out of operations . . . but only if the bodily injury or property damage occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the named insured." (Docs. 104 at ¶ 43, 122 at ¶ 43.) In Wallace & Gale, the Fourth Circuit Court of Appeals held that "the completed-operations hazard found in policies similar to the ones at issue here encompass any bodily injury claim in which the claimant was injured by asbestos exposure attributable to an operation that the insured completed prior to the start of the policy period." Gen. Ins. Co. of Am. v. United States Fire Ins. Co., 886 F.3d 346, 351 (4th Cir. 2018) (citing Wallace & Gale, 385 F.3d at 833–34). The Court finds that the Wallace & Gale Rule comports with Pennsylvania's "trigger" theory of coverage in asbestos cases.

In Pennsylvania, exposure to asbestos, as well as all phases of an ensuing disease, independently trigger coverage. J.H. France Refractories Co. v. Allstate Ins. Co., 626 A.2d 502, 507 (Pa. 1993). And, Pennsylvania's all sums method of allocating liability dictates that "once multiple policies have been triggered for an indivisible loss (as is the case here), the insured is 'free to select the policy or policies under which it is to be indemnified.'" Gen. Refractories Co. v. First State Ins. Co., 500 F.3d 306, 313 (3d Cir. 2007) (quoting J.H. France, 626 A.2d at 508)). Under the Wallace & Gale Rule, "[w]here the injury that triggers coverage occurs subsequent to exposure to an operation[,]" that claim is subject to the aggregate limits of the "completed operations" hazard. Ostrager & Newman, Handbook on Insurance Coverage Disputes § 7.04 (18th ed. 2017). Undoubtedly, multiple policies are triggered by the Asbestos Suits. Accordingly, the Court concludes that the aggregate limits associated with the "completed operations" hazard are applicable.

### D. Conclusion

Based on the foregoing, the Court finds that each site where OVI conducted its operations constitutes a separate "occurrence" and that the aggregate limits of the "completed operations" hazard are applicable. Accordingly, OVI's motions will be granted on the number-of-occurrences issue and denied in all other respects. And, the Insurers' motion will be granted to the extent they seek the applicability of the "completed operations" hazards and denied in all other respects.

## II. ORDER

For all of the reasons set forth in the above Memorandum, it is hereby ORDERED that motions of partial summary judgment (Docs. 82, 86) filed by the Ohio Valley Insulating Company are granted in part and denied in part. It is further ORDERED that the cross motion for summary judgment (Doc. 102) filed by Continental Insurance Company, Zurich American Insurance Company, and Granite State Insurance Company are granted in part denied in part.

IT IS SO ORDERED.

December 27, 2018 /s/Cathy Bissoon
Cathy Bissoon
United States District Judge

cc (via ECF email notification):

All Counsel of Record